# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DANNY R. GARDNER,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09cv00029 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE**, | ) | |
| Commissioner of Social Security, | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Danny R. Gardner, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2009). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more

-1-

than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Gardner protectively filed his applications for DIB and SSI on September 7, 2006, alleging disability as of August 28, 2006, due to breathing problems, chronic obstructive pulmonary disease, hypertension, carpal tunnel syndrome and depression. (Record, ("R."), at 85-87, 101, 109, 124.) The claims were denied initially and upon reconsideration. (R. at 69-71, 75, 76-80.) Gardner then requested a hearing before an administrative law judge, ("ALJ"). (R. at 81-84.) The ALJ held a hearing on April 16, 2008, at which Gardner was represented by counsel. (R. at 36-66.)

By decision dated June 27, 2008, the ALJ denied Gardner's claims. (R. at 17-32.) The ALJ found that Gardner met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2010. (R. at 19.) The ALJ also found that Gardner had not engaged in substantial gainful activity since August 28, 2006, the alleged onset date. (R. at 19.) The ALJ determined that the medical evidence established that Gardner suffered from severe impairments, namely a combination of chronic obstructive pulmonary disease, bilateral carpal tunnel syndrome, hypertension and arthritis, but he found that Gardner did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19, 25.) The ALJ found that Gardner had the residual functional

capacity to perform light work,[1] limited by an occasional ability to climb stairs and ramps, to balance, to stoop, to kneel, to crouch and to crawl and an inability to climb ladders, ropes or scaffolds and to work around concentrated exposure to fumes, odors, dust, gases and poor ventilation, moving machinery or unprotected heights. (R. at 25.) The ALJ also found that Gardner was limited in his ability for fingering or fine manipulation. (R. at 25.) The ALJ found that Gardner was unable to perform any of his past relevant work. (R. at 30.) Based on Gardner's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Gardner could perform, including those of an auto parts salesperson, a production inspector/grader and a packer. (R. at 30-31.) Thus, the ALJ found that Gardner was not under a disability as defined under the Act and was not eligible for benefits. (R. at 32.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2009).

After the ALJ issued his decision, Gardner pursued his administrative appeals, (R. at 12), but the Appeals Council denied his request for review. (R. at 6-9.) Gardner then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2009). The case is before this court on Gardner's motion for summary judgment filed November 19, 2009, and the Commissioner's motion for summary judgment filed December 21, 2009.

---

[1] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2009).

## II. Facts[2]

Gardner was born in 1959, (R. at 43, 85), which, at the time of the ALJ's decision, classified him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Gardner has a ninth grade education[3] and certification in auto body and fender work. (R. at 44, 107.) Gardner has past relevant work as a mechanic and a plumber. (R. at 45, 102.) Gardner stated that he was unable to work because of heart problems, high blood pressure, residuals from carpal tunnel surgery, breathing problems, arthritis in his lower back and hip and neck pain. (R. at 46-47.) He stated that he could sit for up to 20 minutes without interruption and stand for up to 15 minutes without interruption. (R. at 52-53.) Gardner stated that his depression medication and counseling had helped him. (R. at 58.)

Robert Jackson, a vocational expert, also was present and testified at Gardner's hearing. (R. at 58-64.) Jackson classified Gardner's past work as a mechanic as medium[4] and skilled. (R. at 60.) He classified Gardner's past work as a plumber, mechanic and heating and cooling work as heavy[5] and skilled. (R. at 60.) Jackson

---

[2]Since Gardner does not contest the ALJ's findings with regard to his physical residual functional capacity, the undersigned will address only the evidence relating to his mental allegations.

[3]Gardner indicated on his Disability Report that he completed the tenth grade. (R. at 106.) At his hearing, he testified that he completed the ninth grade. (R. at 44.)

[4]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2009).

[5]Heavy work involves lifting items weighing up to 100 pounds at a time with frequent lifting or carrying of items weighing up to 50 pounds. If someone can do heavy work, he also can do medium, light and sedentary work. *See* 20 C.F.R. §§ 404.1567(d), 416.967(d) (2009).

stated that Gardner would have transferrable skills to lighter positions that existed in significant numbers in the national economy, including jobs as a tune-up mechanic and an auto parts counter sales position. (R. at 60.) Jackson was asked to consider an individual of Gardner's age, education and work background, who had the residual functional capacity as indicated by Dr. Frank M. Johnson, M.D., a state agency physician. (R. at 60-61, 322-28.) He stated that there would be light jobs available that existed in significant numbers in the national economy that such an individual could perform, including jobs as an auto parts salesman, a production inspector/grader and a packer. (R. at 61.)

Jackson was asked to consider the same individual, but who would be required to sit and rest for a considerable period of time due to pain, which interfered with his ability to maintain attention, concentration, persistence and pace, caused him to be unpredictable at times and to have difficulty staying on task and relating to other people. (R. at 62.) Jackson stated that there would be no jobs available that such an individual could perform. (R. at 62.) Jackson stated that the jobs as a production inspector and a grader would require gross manipulation and not fine manipulation. (R. at 63.)

In rendering his decision, the ALJ reviewed records from Norton Community Hospital; Johnson City Medical Center; Dr. Anil Agarwal, M.D.; Advance Health Services; Dr. David Sheppard, D.O.; Dr. Gerald G. Blackwell, M.D.; Dr. Shirish Shahane, M.D., a state agency physician; Dr. Howard Mize Jr., M.D.; Dr. Frank M. Johnson, M.D., a state agency physician; Dr. Paul Augustine, M.D.; Wise County Behavioral Health Services; Dr. John R. Bertuso, M.D.; and Dr. William J. Hamil,

M.Ed., L.S.P.E., a licensed senior psychological examiner. Gardner's attorney submitted evidence from Ronald W. Brill, Ph.D., a licensed psychologist, to the Appeals Council.[6]

On May 2, 2007, Gardner was seen by James Kegley, M.S., at Wise County Behavioral Health Services for complaints of depression. (R. at 376-77.) Kegley diagnosed a depressive disorder, not otherwise specified. (R. at 377.) He indicated that Gardner had a then-current Global Assessment of Functioning score, ("GAF"),[7] of 50.[8] (R. at 377.) On May 23, 2007, Kegley reported that Gardner's depression was due to multiple life stressors. (R. at 339.) Kegley diagnosed an adjustment disorder and indicated that Gardner had a then-current GAF score of 50, with his highest and lowest GAF score for the previous six months rating at 50. (R. at 348.) Gardner continued to see Kegley through September 2007, and it was noted that his mood was mildly depressed with a congruent affect. (R. at 365-73.) In November 2007, Kegley reported that Gardner's mood ranged from mildly to moderately depressed. (R. at 362-63.) In December 2007 and January 2008, Kegley reported that Gardner was mildly depressed. (R. at 361, 387.) Kegley reported in February, March and April 2008 that Gardner's mood and affect were appropriate. (R. at 379-84.)

---

[6]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 6-9), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

[7]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[8]A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

On August 28, 2007, Dr. Paul Augustine, M.D., reported that Gardner's symptoms of depression were stable. (R. at 399-400.) Dr. Augustine continued to report through December 2007 that Gardner's symptoms of depression were stable. (R. at 390, 395-98.)

On April 28, 2008, William J. Hamil, M.Ed., L.S.P.E., a licensed senior psychological examiner, evaluated Gardner at the request of Gardner's attorney. (R. at 420-26.) Hamil reported that Gardner was alert and oriented. (R. at 422.) Gardner's attention was somewhat limited. (R. at 422.) Hamil reported that Gardner's short-term memory was limited, and his recent and remote memories were intact. (R. at 422.) Gardner had adequate insight and judgment. (R. at 422.) His fine- and gross-motor skills appeared to be within normal limits. (R. at 425.) Hamil diagnosed a depressive disorder, not otherwise specified, and assessed Gardner's then-current GAF score at 45. (R. at 426.)

Hamil completed a mental assessment indicating that Gardner had a seriously limited ability to follow work rules and to understand, remember and carry out simple instructions. (R. at 427-29.) He indicated that Gardner had no useful ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to function independently, to maintain attention and concentration, to understand, remember and carry out complex and detailed instructions, to maintain personal appearance, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 427-28.) Hamil reported that he based his findings on Gardner's statements of being short-tempered, having difficulty attending and focusing and the need to be prompted

to perform activities of daily living. (R. at 427-28.) Hamil also reported that Gardner's impairments would cause him to be absent from work more than two days a month. (R. at 429.)

On September 11, 2008, Ronald W. Brill, Ph.D., a licensed psychologist, evaluated Gardner. (R. at 434-38.) Brill diagnosed a chronic adjustment disorder with mixed anxiety and depressed mood associated with medical problems and an inability to work and a cognitive disorder, not otherwise specified. (R. at 437.) Brill assessed Gardner's then-current GAF score at 45, with his GAF score for the previous year being 45. (R. at 437.) Brill reported that it was possible that Gardner had sustained a chemically related brain injury from inhalation of toxic chemicals, such as automotive paint fumes and chemical cleaners. (R. at 437.) Gardner admitted that he had breathed these types of fumes for many years and took minimal precaution in using them. (R. at 437.) Brill reported that toxic chemicals often affected brain function, which could result in symptoms similar to Gardner's complaints. (R. at 437.)

Brill completed a mental assessment indicating that Gardner had an unlimited ability to follow work rules. (R. at 439-41.) He indicated that Gardner had a limited, but satisfactory, ability to relate to co-workers, to interact with supervisors, to function independently, to understand, remember and carry out simple instructions and to maintain personal appearance. (R. at 439-40.) Brill indicated that Gardner had a seriously limited ability to use judgment, to maintain attention and concentration, to understand, remember and carry out detailed instructions and to demonstrate reliability. (R. at 439-40.) He also indicated that Gardner had no useful ability to deal with the public, to deal with work stresses, to understand, remember and carry out

complex instructions, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 439-40.) He based his findings on Gardner's emotional upsets, irritability, anger and stressors. (R. at 439.) He reported that Gardner's short-term memory was fair, but his long-term memory was impaired, and Gardner had an inability to focus and concentrate. (R. at 440.) He reported that Gardner would be absent for work more than two days per month due to his impairments. (R. at 441.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2009); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2009).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the

claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2009); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated June 27, 2008, the ALJ denied Gardner's claims. (R. at 17-32.) The ALJ determined that the medical evidence established that Gardner suffered from severe impairments, namely a combination of chronic obstructive pulmonary disease, bilateral carpal tunnel syndrome, hypertension and arthritis, but he found that Gardner did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19, 25.) The ALJ found that Gardner had the residual functional capacity to perform a limited range of light work. (R. at 25.) Thus, the ALJ found that Gardner was unable to perform any of his past relevant work. (R. at 30.) Based on Gardner's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Gardner could perform. (R. at 30-31.) Thus, the ALJ found that Gardner was not under a disability as defined under the Act and was not eligible for benefits. (R. at 32.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Gardner argues that the ALJ erred by finding that he did not have a severe mental impairment. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-10.) Gardner does not challenge the ALJ's finding with

regard to the effects of his remaining alleged impairments on his residual functional capacity. Based on my review of the record, I do not find that substantial evidence exists to support the ALJ's finding. The ALJ specifically rejected the opinion of Hamil stating that the evidence indicated that Gardner responded significantly and quickly to treatment. (R. at 24.) The ALJ, however, did not have the benefit of Brill's psychological assessment, which was filed when the case was before the Appeals Council. According to Brill, Gardner continued to suffer impairment in his work-related mental abilities five months after Hamil's evaluation.

The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) (2009). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b) (2009). The Fourth Circuit held in *Evans v. Heckler*, that, "'[a]n impairment can be considered as "not severe" only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (citations omitted).

The record shows that Gardner has been treated for depression since May 2007.

(R. at 367-77.) At that time, his GAF score was assessed at 50, indicating serious symptoms or serious impairments in social or occupational functioning. (R. at 377.) Although, Gardner's symptoms of depression appeared to improve, (R. at 379-84, 390, 399-400), Hamil diagnosed Gardner with a depressive disorder in April 2008. (R. at 426.) Hamil assessed Gardner's then-current GAF score at 45. (R. at 426.) Hamil noted that Gardner's attention span and short-term memory were limited. (R. at 422.) He indicated that Gardner had a seriously limited ability to follow work rules and to understand, remember and carry out simple instructions. (R. at 427-29.) He reported that Gardner had no useful ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to function independently, to maintain attention and concentration, to understand, remember and carry out complex and detailed instructions, to maintain personal appearance, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 427-28.)

In September 2008, psychologist Brill diagnosed Gardner with a chronic adjustment disorder with mixed anxiety and depressed mood and a cognitive disorder. (R. at 437.) Brill assessed Gardner's GAF score at 45, noting that his GAF score for the previous year was 45. (R. at 437.) Brill reported that Gardner's symptoms could result from a chemically-related brain injury from inhalation of toxic chemicals. (R. at 437.) Brill indicated that Gardner had a limited, but satisfactory, ability to relate to co-workers, to interact with supervisors, to function independently, to understand, remember and carry out simple instructions and to maintain personal appearance. (R. at 439-40.) Brill indicated that Gardner had a seriously limited ability to use judgment, to maintain attention and concentration, to understand, remember and carry out

detailed instructions and to demonstrate reliability. (R. at 439-40.) He also indicated that Gardner had no useful ability to deal with the public, to deal with work stresses, to understand, remember and carry out complex instructions, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 439-40.)

Thus, even if the ALJ's rejection of Hamil's assessment was appropriate, the uncontradicted psychological evidence shows that Gardner suffers from a severe mental impairment. Therefore, for the above-stated reasons, I cannot find that substantial evidence exists to support the ALJ's finding that Gardner did not suffer from a severe mental impairment.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist to support the Commissioner's finding that Gardner did not suffer from a severe mental impairment; and

2. Substantial evidence does not exist to support the Commissioner's finding that Gardner was not disabled under the Act and was not entitled to DIB or SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Gardner's and the

Commissioner's motions for summary judgment, vacate the Commissioner's decision denying benefits and remand this case to the Commissioner for further consideration consistent with this Report and Recommendation.

### **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2009):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: April 27, 2010.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE